IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

ANTOINE CLEMONS,
MICHAEL COOPER, and
PHILLIP ROBINSON,

      Plaintiffs,

vs.

BRIAN WULLWEBER and
THE CITY OF DUBUQUE,

      Defendants.

No. C10-1032

ORDER DENYING MOTION FOR
LEAVE TO AMEND

## TABLE OF CONTENTS

I.   INTRODUCTION .................................. 1

II.  PROCEDURAL HISTORY ........................... 2

III. DISCUSSION ..................................... 3
    A.   *Was the Motion to Amend Timely Filed?* ............ 4
    B.   *Is the Proposed Amendment Futile?* ............... 8
    C.   *Summary* ................................... 14

IV.  ORDER ........................................ 14

## I. INTRODUCTION

This matter comes before the Court on the Motion for Leave to File Second Amended & Substituted Complaint & Jury Demand (docket number 13) filed by the Plaintiffs on August 12, 2011, the Resistance (docket number 14) filed by the Defendants on August 24, 2011, and the Reply (docket number 17) filed by the Plaintiffs on September 1, 2011. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On December 8, 2010, Plaintiffs Antoine Clemons and Michael Cooper filed a Complaint (docket number 2) seeking damages from Defendants Brian Wullweber and the City of Dubuque. Clemons seeks damages for an incident which occurred on March 7, 2008, while Cooper seeks damages for an incident occurring on October 10, 2009. Both Plaintiffs claim that Wullweber, who is a police officer with the City of Dubuque, used excessive force in effecting an arrest. Specifically, it is claimed that Wullweber used a police dog to attack Plaintiffs unnecessarily. Plaintiffs also claim that Wullweber's actions were racially motivated.

On February 11, 2011, Defendants filed a partial motion to dismiss, asserting that Clemons' claim is barred by the statute of limitations. The Court denied the motion, concluding that it was required to assume the truth of Clemons' allegation that he acted under compulsion in dismissing an earlier state court action, and that the instant federal action is a continuation action pursuant to Iowa Code section 614.10.

On May 24, 2011, an amended and substituted complaint was filed, adding Phillip Robinson as an additional plaintiff. The amended complaint claims that Wullweber and his police dog viciously attacked Robinson on November 9, 2009. Plaintiffs assert that "[t]he Defendants have a pattern or practice of using excessive force in making arrests of criminal suspects, particularly against African Americans or other minorities, and were motivated by Plaintiffs' race in effectuating their arrests using excessive force." On June 1, 2011, Defendants filed an answer to the amended complaint, denying the substantive allegations.

On August 12, 2011, Plaintiffs filed the instant motion for leave to file a second amended and substituted complaint. According to the motion, "[t]he purpose of the Second Amended and Substituted Complaint and Jury Demand is to include a request for Declaratory and Injunctive relief." In comparing the proposed second amended complaint, which is attached to the instant motion, with the first amended complaint, the Court notes

2

that the date of the incident involving Plaintiff Phillip Robinson was amended from November 9, 2009 to November 22, 2009.[1] An additional allegation was included against the City of Dubuque in paragraph 32, and the formatting was changed. The principal change, however, is the addition of Count III, entitled "Declaratory and Injuctive [sic] Relief." After reasserting the allegations set forth earlier in the complaint, the Plaintiffs state that they "seek a judgment declaring that the Defendants must cease the unconstitutional activities described herein and enjoin the City of Dubuque and Wullweber from the use of K-9 Doerak in the apprehension of criminal suspects." Plaintiffs assert that "[a]t the time of this filing, a real and immediate threat of future injury exists for the Plaintiffs and any other individuals subjected to being arrested by Defendant Wullweber and his out of control K-9 Doerak."

### III. DISCUSSION

Plaintiffs ask that they be permitted to amend their complaint a second time, to add a claim for declaratory and injunctive relief. Except when amending its pleadings "as a matter of course," as defined in FEDERAL RULE OF CIVIL PROCEDURE 15(a)(1), a party may amend its pleadings "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Plaintiffs are not entitled to amend their complaint "as a matter of course" and Defendants do not consent to Plaintiffs' proposed amendment. Accordingly, Plaintiffs seek leave of the Court to amend their complaint and seek equitable relief.

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." The United States Supreme Court has made it clear that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A party does not,

---

[1] The "introduction" to the proposed second amended complaint continues to refer to November 9, 2009. *See* proposed Second Amended Complaint (docket number 13-1), ¶ 2 at 1.

however, have an absolute or automatic right to amend. *See U.S. ex rel. Lee v. Fairview Health System*, 413 F.3d 748, 749 (8th Cir. 2005).

A denial of leave to amend may be justified "by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). Here, Defendants argue that granting the motion "will unduly prejudice Defendants in causing them further delay" and, in any event, the claim for injunctive relief "has no likelihood of success on its merits."

### *A. Was the Motion to Amend Timely Filed?*

The Court first turns to the question of whether the motion is timely. On March 1, 2010, Plaintiff Antoine Clemons filed an action in the Iowa District Court for Dubuque County for injuries sustained during his arrest on March 7, 2008. The state court action was dismissed by Clemons, however, on October 14, 2010. Clemons then filed the instant action, together with Plaintiff Michael Cooper, on December 8, 2010.

On May 10, 2011, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Among other things, the parties agreed to a July 12, 2011 deadline for amending pleadings. An amended and substituted complaint was filed on May 24, 2011, adding Plaintiff Phillip Robinson. On August 12, 2011, 31 days after the deadline for amending pleadings, Plaintiffs filed the instant motion to file a second amended and substituted complaint.

Balanced against the liberal amendment policy of Rule 15(a) is the court's interest in enforcing its scheduling orders. Here, the Court established a July 12, 2011 deadline for motions to amend pleadings. Scheduling orders may be modified only for "good cause." FED. R. CIV. P. 16(b)(4). *See also* Local Rule 16.f ("The deadlines established by the Rule 16(b) and 26(f) scheduling order and discovery plan will be extended only upon written motion and a showing of good cause.").

4

"The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). That is, notwithstanding the liberal amendment provisions found in the FEDERAL RULES OF CIVIL PROCEDURE, "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show good cause to modify the schedule." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir. 2008).

> Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a).

*Sherman*, 532 F.3d at 716 (citing *Popoalii*). *See also In re Milk Products Antitrust Litigation*, 195 F.3d 430, 437-38 (8th Cir. 1999) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.") (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).

In this case, Plaintiffs' motion for leave to amend comes 31 days after the deadline established for filing motions to amend the pleadings. Accordingly, the Court must determine whether Plaintiffs have established "good cause" for failing to comply with the deadline. In their motion for leave to amend, Plaintiffs assert that "[t]he need for Declaratory and Injunctive relief only became known to the Plaintiffs after their K-9 expert reviewed the Rule 26(a) required disclosures from the Defendants, including reports and other materials relating to each of the ten attacks K-9 Doerak has been involved in since being activated by the Dubuque Police Department in 2007."[2] The motion and supporting documents are silent regarding when the information referred to in the motion was received by Plaintiffs. Pursuant to the Scheduling Order and Discovery Plan, the Rule

---

[2] *See* Motion for Leave to File Second Amended and Substituted Complaint (docket number 13), ¶ 3 at 1.

5

26(a) initial disclosures were due not later than June 16, 2011. Plaintiffs have not alleged that the information was not produced timely. The motion is also silent regarding when the "reports and other materials" were provided to Plaintiffs' expert, Kyle K. Heyen. Moreover, Plaintiffs' motion and brief fail to explain why the need for injunctive relief "only became known" after Mr. Heyen reviewed the Rule 26(a) disclosures.

In their proposed second amended complaint, Plaintiffs seek an order enjoining defendants "from the use of K-9 Doerak in the apprehension of criminal suspects." Plaintiffs assert that Doerak has bitten ten suspects since 2007 "and not a single one of those bites was reasonable and necessary to effectuate the arrest of the criminal suspect attacked."[3] Plaintiffs argue that continued use of Doerak "will continue to cause, irreparable harm which outweighs any safety interest alleged by the Defendants."[4]

Plaintiffs' have long been aware of the facts which underlie their claim for injunctive relief. A newspaper article dated June 6, 2010 – attached to Plaintiffs' instant motion as Exhibit B – refers to Clemons' state court action and refers to "10 suspects bitten by the K-9 in the course of apprehension since 2007."[5] In their initial complaint, filed on December 8, 2010, Plaintiffs alleged that the City of Dubuque failed to properly train Wullweber and/or his dog, failed to ensure that Wullweber and the dog were acting in compliance with police department policy, and had knowledge that Wullweber and the dog "had a propensity to use excessive force in effectuating arrests, particularly of African American or other minority suspects."[6] Plaintiffs further claimed that Defendants "have

---

[3] *See* Proposed Second Amended and Substituted Complaint (docket number 13-1), ¶ 53 at 9.

[4] *Id.*, ¶ 51 at 9.

[5] *See* docket number 13-1 at 14-17.

[6] *See* Complaint (docket number 2), ¶ 26 at 4.

a pattern or practice" of using excessive force against African Americans.[7] Plaintiffs made similar claims in their amended and substituted complaint, filed on May 24, 2011.[8] The only additional claim contained in the proposed second amended and substituted complaint is that the City of Dubuque "failed to enact a suitable policy for the use of K-9 in apprehension of a criminal suspect."[9]

The Court concludes that Plaintiffs have not shown good cause for failing to file their motion for leave to amend by the July 12, 2011 deadline. Plaintiffs do not claim that they discovered any additional facts after the deadline, which would justify an extension of the deadline. Rather, they assert that the "need" for injunctive relief "only became known" after their expert reviewed the Rule 26(a) required disclosures. Plaintiffs do not claim that the discovery was untimely, nor do they disclose when the information was provided to their expert. Moreover, Plaintiffs do not explain why review of the "reports and other materials" by their expert was necessary for them to recognize the "need" for injunctive relief.

In summary, the Court concludes that Plaintiffs have not shown good cause for failing to comply with the Court's Order establishing a deadline for filing motions to amend the pleadings. *Sherman*, 532 F.3d at 716 ("The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.") (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). If Plaintiffs believed that additional time was necessary to consider amendments to the pleadings after receiving Defendants' initial disclosures, then their remedy was to seek an extension of the pleadings deadline. They did not do so. The Court finds that the instant motion is untimely and will be denied.

---

[7] *Id.*, ¶ 27 at 4.

[8] *See* Amended and Substituted Complaint (docket number 11), ¶¶ 32-33 at 5.

[9] *See* Proposed Second Amended and Substituted Complaint (docket number 13-1), ¶ 32 at 5.

## B. Is the Proposed Amendment Futile?

As set forth above, Plaintiffs' motion for leave to file a second amended and substituted complaint was not timely filed and will be denied. The Court notes parenthetically, however, that the motion would also be denied on the second ground urged by Defendants. That is, I believe that a claim for injunctive relief would be futile.

"Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). Accordingly, it is necessary to review Plaintiffs' proposed claim for injunctive relief to determine whether it would withstand a motion to dismiss.

In determining whether a preliminary injunction should issue, the Court must consider four factors set forth in the often-cited decision in *Dataphase Systems*:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction would inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits." *Bank One v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999). *See also Oglala Sioux Tribe v. C & W Enterprises, Inc.*, 542 F.3d 224, 229 (8th Cir. 2008).[10]

---

[10] The United States Supreme Court has described the four factors slightly differently:
> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A

(continued...)

To support their claim of irreparable harm, Plaintiffs allege that "a real and immediate threat of future injury exists for the Plaintiffs and any other individuals subjected to being arrested by Defendant Wullweber and his out of control K-9 Doerak."[11] In support of their allegation, Plaintiffs cite an incident on March 6, 2011. Apparently, Plaintiff Michael Cooper was stopped by Dubuque police officers on that date for suspected operating while intoxicated.[12] Plaintiffs allege that "Defendant Wullweber escalated the situation by taking Doerak out of his cruiser and walking the K-9 on a leash near to the location where Cooper was being questioned."[13] Plaintiffs' expert, who apparently reviewed a video recording of the incident, stated in his report that "Plaintiff Cooper did not want to be arrested and he was not cooperative but he did not strike or

---

[10](...continued)
>
> plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (quoted with approval in *Monsanto Co. v. Geertson Seed Farms*, ____ U.S. ____, 130 S. Ct. 2743 (2010)).

[11] *See* Proposed Second Amended and Substituted Complaint (docket number 13-1), ¶ 48 at 8.

[12] In paragraph 49 of the proposed second amended and substituted complaint, reference is made to "Plaintiff Robinson." The remaining part of the paragraph refers, however, to "Cooper." A review of Plaintiffs' expert's report suggests that the incident involved Cooper, rather than Robinson. *See* Report of Kyle K. Heyen (docket number 13-2) at 17-18.

[13] *See* Proposed Second Amended and Substituted Complaint (docket number 13-1), ¶ 49 at 8-9.

attempt to strike any police officer."[14] Apparently, Doerak was not used in Cooper's arrest.

Before addressing the issue of whether Plaintiffs will suffer irreparable harm, the Court addresses the issue of whether Plaintiffs have standing to raise a claim for injunctive relief. While Defendants' resistance is not phrased in terms of standing, it is an essential part of any claim and may be examined by the Court *sua sponte*. *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). To have standing, a party must establish "(1) 'an injury in fact,' meaning 'the actual or imminent invasion of a concrete and particularized legal interest'; (2) a causal connection between the alleged injury and the challenged action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision of the court." *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 985-86 (8th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm." *Park v. Forest Service of United States*, 205 F.3d 1034, 1037 (8th Cir. 2000). Because there is no ongoing unlawful conduct present here, Plaintiffs must demonstrate "a real and immediate threat that [they] would again suffer similar injury in the future." *Id.* (quoting *Harmon v. City of Kansas City*, 197 F.3d 321, 327 (8th Cir. 1999)).

In *Park*, the plaintiff, as a consequence of her membership in an environmental group, was subjected to an unconstitutional checkpoint on a forest road. Park brought an action for injunctive relief, asking that the Forest Service be enjoined from utilizing such checkpoints at the group's future annual meetings. In reversing the district court, the Eighth Circuit Court of Appeals dismissed the action, concluding that "Ms. Park has not made an adequate showing that she will be subjected to unconstitutional checkpoints in the future." *Id.* at 1037.

---

[14] *See* Report of Kyle K. Heyen (docket number 13-2) at 19.

> The mere fact that the checkpoint used at the 1996 gathering was unconstitutional cannot alone give Ms. Park standing: "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

*Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). While the Forest Service also employed unconstitutional checkpoints in 1997, 1998, and 1999, the Court concluded that these were not "relevant on the issue of standing because all of these events occurred after Ms. Park filed her original complaint." *Id.*[15]

The Court's opinion in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) is also instructive. Lyons was stopped by Los Angeles police officers at 2:00 a.m. on a routine traffic stop. According to his complaint, "although Lyons offered no resistance or threat whatsoever, the officers, without provocation or justification, seized Lyons and applied a 'chokehold' . . . rendering him unconscious and causing damage to his larynx." *Id.* at 97-98. Lyons sued for monetary damages, declaratory judgment, and injunctive relief. Specifically, Lyons sought a judgment that "use of the chokeholds absent the threat of immediate use of deadly force is a *per se* violation of various constitutional rights." *Id.* at 98. Lyons also sought injunctive relief against the use of chokeholds, "except in situations where the proposed victim of said control reasonably appears to be threatening the immediate use of deadly force." *Id.* The district court granted the City's motion for partial summary judgment, dismissing Lyons' claims for declaratory judgment and injunctive relief. The Ninth Circuit Court of Appeals reversed and remanded, holding "there was a sufficient likelihood that Lyons would again be stopped and subjected to the unlawful use of force to constitute a case or controversy and to warrant the issuance of an injunction, if the injunction was otherwise authorized." *Id.* On remand, the district court

---

[15] The Court noted, however, that while Park did not have standing to seek injunctive relief in 1996, it was "possible" that she had standing "in an action commenced today." *Park*, 205 F.3d at 1040.

entered a preliminary injunction. The Ninth Circuit Court of Appeals affirmed, and the United States Supreme Court granted *certiorari*.

The Supreme Court reversed the Court of Appeals on two grounds. First, the Court concluded that Lyons did not have standing to pursue his claim for injunctive relief.

> It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

*Id.* at 101-02 (citations omitted). The Court concluded that "Lyons has failed to demonstrate a case or controversy with the City that would justify the equitable relief sought." *Id.* at 105.

> That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.

*Id.*

Not only did Lyons lack standing to seek injunctive relief, the Supreme Court found that he could not demonstrate irreparable harm. A claim for injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'" *Id.* at 111.

> Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional. This is not to suggest that such undifferentiated claims should not be taken seriously by local authorities. Indeed, the interest of an alert and interested citizen is an essential element of an effective and fair government, whether on the local, state or national level. A federal court, however, is not the proper forum to press such claims unless the requirements for entry and the prerequisites for injunctive relief are satisfied.

*Id.* at 111-12.

Similarly, Plaintiffs in the instant action have brought claims for monetary damages, asserting a violation of their constitutional rights. Before they are entitled to injunctive relief, however, they must show "a sufficient likelihood" that they will be wronged again in a similar way. *Id.* at 111. That is, "[s]tanding to seek injunctive relief requires a plaintiff, *inter alia*, to show a likelihood of a future injury." *Meuir*, 487 F.3d at 1119. In applying this "probability calculus," the Court concludes that Plaintiffs have not established a sufficient likelihood that they will be subjected to the use of excessive force by Doerak in the future and, therefore, they lack standing to assert a claim for injunctive relief. *Park*, 205 F.3d at 1038. Moreover, the Court concludes that Plaintiffs have not shown that failure to grant an injunction will result in irreparable harm to Plaintiffs. The "threat of future injury" to Plaintiffs, or the "exposure" to Plaintiffs is remote, at best.

*Lyons*, 461 U.S. at 112. Plaintiffs did not cite any case finding irreparable harm to the movant under analogous circumstances, and the Court has found none.

### C. Summary

In summary, the Court concludes that Plaintiffs' motion for leave to file second amended and substituted complaint was untimely and will be denied for that reason. Alternatively, the Court finds that Plaintiffs' claim for injunctive relief fails as a matter of law. Plaintiffs are unable to establish a sufficient likelihood that they will again be wronged in a similar way. Accordingly, they lack standing to seek injunctive relief and are unable to establish the irreparable harm requirement for granting injunctive relief. Therefore, the Court finds that the motion should be denied.

## IV. ORDER

IT IS THEREFORE ORDERED that the Motion for Leave to File Second Amended and Substituted Complaint (docket number 13) filed by the Plaintiffs is **DENIED**.

DATED this 4th day of October, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA