IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| ANTOINE CLEMONS,<br>MICHAEL COOPER, and<br>PHILLIP ROBINSON,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIAN WULLWEBER and<br>THE CITY OF DUBUQUE,<br><br>Defendants. | No. C10-1032<br><br>RULING ON MOTION FOR<br>PARTIAL SUMMARY JUDGMENT |

TABLE OF CONTENTS

I. INTRODUCTION .................................... 2

II. PROCEDURAL HISTORY ............................ 2

III. RELEVANT FACTS ................................. 3
    A.   The Arrest of Antoine Clemens ..................... 3
    B.   Clemons' Claims ................................ 3

IV. LEGAL STANDARD FOR SUMMARY JUDGMENT ........ 5

V. DISCUSSION ...................................... 6
    A.   Iowa Code Section 614.10 ......................... 7
    B.   Was Clemons Compelled to Dismiss His Action in State Court? ... 12
        1.   Defendant Wullweber Being Allowed to Wear His Police
            Uniform ................................. 13
        2.   Federal Jury ............................... 16

VI. SUMMARY ....................................... 17

VII. ORDER .......................................... 17

## I. INTRODUCTION

This matter comes before the Court on the Motion for Partial Summary Judgment (docket number 24) filed by Defendants Brian Wullweber and the City of Dubuque on October 19, 2011; and the Resistance (docket number 25) filed by Plaintiff Antoine Clemons on November 9, 2011. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On December 8, 2010, Plaintiffs Antoine Clemons and Michael Cooper filed a Complaint and Jury Demand against Defendants Brian Wullweber and the City of Dubuque. The complaint was in two counts and asserted "unreasonable seizure-excessive force" (Count I) and "race discrimination" (Count II). On February 11, 2011, Defendants filed a Partial Motion to Dismiss, asserting the claim of Plaintiff Antoine Clemons was barred by the statute of limitations. On May 20, 2011, the Court denied the motion to dismiss.

On May 24, 2011, Plaintiffs filed an Amended and Substituted Complaint and Jury Demand adding another plaintiff, Phillip Robinson. The amended Complaint remained in two counts, asserting "unreasonable seizure-excessive force" (Count I) and "race discrimination" (Count II). On June 1, 2011, Defendants filed an Answer, generally denying the material allegations contained in the amended complaint, and asserting certain affirmative defenses. On October 19, 2011, Defendants timely filed the instant motion for partial summary judgment. Trial is scheduled before the undersigned on October 15, 2012.[1]

---

[1] With the consent of the parties, this case was referred to the undersigned Magistrate Judge for all further proceedings, pursuant to 28 U.S.C. § 636(c). *See* Order of Reference (docket number 9) at 2.

## III. RELEVANT FACTS

### A. The Arrest of Antoine Clemens

On March 7, 2008, Plaintiff Antoine Clemons was operating a motor vehicle within the city limits of Dubuque. Clemons was observed running a red light and initially failed to stop in response to the flashing lights and siren of an approaching police vehicle. After a period of time, Clemons stopped and left the vehicle he had been driving and continued to attempt to avoid arrest by running on foot. After running for a block or two, Clemons recognized the futility of continuing to attempt to avoid arrest, stopped, turned around, knelt on the ground, and placed his hands above his head.

At that time, Defendant Brian Wullweber, a police officer with the City of Dubuque, released a police dog and allowed it to attack Clemons. The police dog attacked Clemons, biting him repeatedly on the left arm and left hip. For a short period of time, Wullweber then restrained the police dog and ordered Clemons to lie flat on the ground. As Clemons was complying with the order to lie on the ground, Wullweber released the police dog to again attack Clemons, this time biting Clemons more than once on the top of his head.

### B. Clemons' Claims

Clemons is an African American. He asserts that Dubuque failed to properly train Officer Wullweber and/or the police dog, failed to ensure that they were acting in compliance with police department policy, and had knowledge that they "had a propensity to use excessive force in effectuating arrests, particularly of African American or other minority suspects."[2] The amended complaint asserts that Defendants "have a pattern or practice of using excessive force in making arrests of criminal suspects, particularly

---

[2] *See* Plaintiffs' Amended and Substituted Complaint and Jury Demand (docket number 11) at 5; ¶ 32.

against African Americans or other minorities, and were motivated by Plaintiffs' race in effectuating their arrests using excessive force."[3]

Plaintiff Antoine Clemons initially filed his action in the Iowa District Court for Dubuque County.[4] It is undisputed that Clemons' state court action was timely filed on March 1, 2010.[5] Clemons asserts that when his attorney attempted to take a videotaped deposition of Officer Wullweber, Wullweber insisted on wearing his police uniform. Accordingly, Clemons sought a protective order. An Iowa district court judge denied Clemons' request for a protective order, concluding that the Defendants "were sued in the capacity as police officers and therefore should be permitted to wear their uniforms during the videotaped deposition."[6] Clemons claims that the adverse ruling "placed [his] right to a trial in which the credibility of witnesses is decided by the content of their testimony, not by what they are wearing, in serious peril."[7]

Clemons maintains that the adverse ruling on his request for a protective order, "coupled with the expanding factual basis for the case compelled" him to dismiss the state court action and bring the lawsuit in this court.[8] The state court action was dismissed by Clemons without prejudice on October 14, 2010. The dismissal specifically stated that the

---

[3] *Id.* at 5; ¶ 33.

[4] *See Antoine Clemons v. Brian Wullweber and The City of Dubuque*, No. LACV056487 (Iowa District Court for Dubuque County).

[5] *See* Plaintiffs' Amended and Substituted Complaint and Jury Demand (docket number 11) at 2-3, ¶ 10.

[6] *See* Defendants' Appendix (docket number 24-3) at 00030.

[7] *See* Clemons' Brief (docket number 25-2) at 4.

[8] *Id.* at 4-5.

cause of action is "to be re-filed in Federal Court as allowed by I.C.A. 614.10."[9] The dismissal further describes why Clemons felt "compelled" to dismiss the action in state court:

> Plaintiff is compelled to file this voluntary dismissal as a conscious, reasoned and reasonable decision based upon the undersigned counsel's best legal judgment under the circumstances. Plaintiff believes that Defendant Wullweber will not be allowed to wear his police uniform during Court proceedings if this matter is pending in Federal Court, as was allowed by Order of the Iowa District Court dated August 20, 2010. Further, the undersigned counsel intends on re-filing this lawsuit including an additional Plaintiff that has been harmed as a result of the unlawful conduct of the Defendants. Finally, Plaintiff believes that justice will be more fairly obtained by a jury panel consisting of members not exclusively from Dubuque County.

*See* Defendants' Appendix (docket number 24-3) at 00032. Clemons filed the initial complaint in federal court on December 8, 2010, less than two months after the state court action was dismissed.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party

---

[9] *See* Defendants' Appendix (docket number 24-3) at 00032 (Clemons' Dismissal Without Prejudice).

"'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

In their partial motion for summary judgment, Defendants ask that the claims of Plaintiff Antoine Clemons be dismissed, asserting that they are barred by the applicable statute of limitations.[10] Clemons concedes that the two-year statute of limitations found in Iowa Code section 614.1(2) is applicable to his claims. The cause of action accrued when the incident occurred on March 7, 2008. Accordingly, any action filed after March 7, 2010 would generally be time-barred. This case was filed on December 8, 2010.

In response, Clemons asserts that his claims are not time-barred due to the application of Iowa Code section 614.10. That section provides that if an action "fails," then a new action brought within six months will be considered to be "a continuation of

---

[10] The motion is a "partial" motion for summary judgment because Defendants concede that the claims of Plaintiffs Michael Cooper and Phillip Robinson are not time-barred.

6

the first."[11] Clemons' state court action was timely filed. Clemons voluntarily dismissed the action without prejudice on October 14, 2010. Clemons filed the instant action less than two months later.

Defendants argue, however, that Iowa Code section 614.10 is not applicable because Clemons was not compelled to dismiss his case in state court. Specifically, Defendants contend that Clemons' dismissal of the state court action was negligent and, therefore, he is not entitled to the protections of Code section 614.10. Thus, Defendants assert that they are entitled to summary judgment and dismissal of Clemons' claims, as time-barred by the two-year statute of limitations.

### A. Iowa Code Section 614.10

The Iowa Supreme Court recently addressed Iowa Code section 614.10, in *Furnald v. Hughes*, 804 N.W.2d 273 (Iowa 2011), and discussed its applicability to a plaintiff's voluntary dismissal of an action. Iowa Code section 614.10, sometimes referred to as a "savings statute," provides generally that if an action "fails," then a subsequent action will be considered "a continuation of the first," if it is brought within six months. The Iowa Supreme Court reviewed the small number of Iowa cases which addressed the applicability of the Iowa savings statute to a voluntary dismissal of an action. The Court believes it is instructive to review these cases as well.

The first Iowa case to address the savings statute is *Archer v. Chicago, B. & Q. R. Co.*, 65 Iowa 611, 22 N.W. 894 (Iowa 1885). In *Archer*, the plaintiff brought an action in federal court, but voluntarily dismissed the action because he believed he could not receive a fair trial in federal court. 22 N.W. at 895. The plaintiff then attempted to bring

---

[11] Iowa Code section 614.10 states:
> If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

7

the same action in state court. The Iowa Supreme Court refused to apply the savings statute, and did not allow the plaintiff to re-file his claim in state court. *Id.* at 895. The *Archer* court found that "a voluntary dismissal under compulsion" may constitute "failure" under the statute, but a voluntary dismissal without compulsion constituted negligence. *Id.* at 894-95. In *Furnald*, the Iowa Supreme Court stated that "[a]pplying these principles, the *Archer* court held that dismissal because the attorney believed his client would not receive a fair trial in federal court was an insufficient ground to come within the statute." *Furnald*, 804 N.W.2d at 280.

The Iowa Supreme Court next addressed Iowa's savings statute in *Pardey v. Town of Mechanicsville*, 112 Iowa 68, 83 N.W. 828 (Iowa 1900). In *Pardey*, the plaintiff's case proceeded to trial. At the conclusion of testimony for the plaintiff, the defendant moved for a directed verdict. The plaintiff then dismissed her case without prejudice because she claimed that her witnesses were induced to drink alcohol to the point of intoxication by the defendant, and the intoxicated state of the witnesses prevented her from calling them to testify. *Pardey*, 83 N.W. at 828. In rejecting *Pardey*'s argument, the court noted that the plaintiff did not seek a continuance or delay in the trial to remove the difficulty caused by the intoxication of her witnesses. *Id.* at 829. The *Pardey* court concluded that the plaintiff's "dismissal was voluntary, not compulsory, and to thus dismiss the case was negligence in its prosecution." *Id.* (citing *Archer*, 22 N.W. at 894). In *Furnald*, the Iowa Supreme Court observed that "[u]nder *Pardey*, a 'failure' does not occur when there are other potential procedural options available to give the plaintiff relief; when there are other potential procedural options of relief available, it is negligence for a party not to pursue them." *Furnald*, 804 N.W.2d at 280.

The next case considered by the Iowa Supreme Court was *Ceprley v. Incorporated Town of Paton, Greene County*, 120 Iowa 559, 95 N.W. 179 (Iowa 1903). In this case, the plaintiff dismissed his action at the close of testimony in order to avoid a directed verdict. *Ceprley*, 95 N.W. at 179. According to the plaintiff, dismissal was necessary

because the defendant's testimony at trial included unexpected testimony, which he claimed he could have rebutted with testimony from other witnesses. *Id.* at 180. The plaintiff maintained that without knowing the defendant's unexpected testimony, it was "impossible" to get his rebuttal witnesses to the trial, thereby necessitating the dismissal. *Id.* The *Ceprley* court rejected the plaintiff's assertion that it was necessary for him to dismiss his case, and determined that under such circumstances, the Iowa's savings statute was not applicable. *Id.* The court noted that a slight delay in the trial or a continuance was available to resolve the problem. *Id.* (citing *Pardey*, 83 N.W. at 828).

The Iowa Supreme Court next considered the issue of invoking the savings statute after a voluntary dismissal in *Weisz v. Moore*, 222 Iowa 492, 265 N.W. 606 (Iowa 1936). In *Weisz*, the plaintiff's attorney received a telephone call from the trial judge assigned to the case, informing him that the trial would begin the next day. *Weisz*, 265 N.W. at 610. The Plaintiff's counsel advised the judge that he could not present his case the next day because he lived 150 miles from the place of trial and his client lived 250 miles away. The plaintiff's attorney indicated that he was willing to bring the case to trial later in the week, and asked to delay the trial. The judge refused plaintiff's counsel's request, unless he could get consent from the defendant's counsel to a delay of the trial. The plaintiff's attorney attempted to get defendant's counsel's consent to delay the trial, but defendant's counsel refused to give consent. The plaintiff's counsel again contacted the presiding judge and requested postponement of the trial, but the judge denied counsel's request. The plaintiff's attorney told the judge that under the circumstances, he was forced to dismiss the action without prejudice. The *Weisz* court determined that the savings statute applied to the plaintiff's action because the plaintiff was compelled to dismiss his action.

> Appellant claims, and so testified, that the distances from the place of his employment and his attorney's residence to the place of trial were such that it would have been difficult, if not impossible, for them to have reached the place of trial on the following morning[.] . . . The evidence does not indicate any intention to unduly delay the trial of the case. The plaintiff

> merely asked for a sufficient delay so that he would be able to get to the place of trial and be prepared to enter the trial of the case. Under these circumstances, we do not think that it can be said that there was a voluntary dismissal without any compulsion, because the plaintiff had not filed a formal motion for a continuance before dismissing the case.

*Weisz*, 265 N.W. at 610.

More recently, the Iowa Supreme Court briefly addressed Code section 614.10 in *Tull v. Honda Research and Development, Ltd.*, 469 N.W.2d 683 (Iowa 1991). In *Tull*, the plaintiffs brought an action against four corporate defendants and one individual defendant. Plaintiffs settled with the four corporate defendants, and the corporate defendants were dismissed from the lawsuit. The remaining individual defendant, a nonresident of the county where the action was filed, moved to dismiss the action pursuant to a Iowa Code section 616.20, which provides that a nonresident defendant is entitled to dismissal when all resident defendants are dismissed. The district court refused to dismiss the lawsuit on other statutory grounds. The Iowa Supreme Court reversed the decision of the district court and held that the remaining defendant was entitled to dismissal pursuant to Code section 616.20. *Id.* at 687. The Iowa Supreme Court noted parenthetically, however, that a new action would not be time-barred.

> Although our holding mandates a dismissal of the [] lawsuit, we see no statute of limitations problem. We think Iowa Code section 614.10 saves the lawsuit. . . . [W]e fail to see how the [plaintiffs] could be negligent in not prosecuting the case. What triggered dismissal under section 616.20 was the settlement with the four corporate defendants coupled with the remaining defendant being a nonresident of Polk County. In our view, a contrary result would tend to discourage settlements.

*Id.* In *Furnald*, the Iowa Supreme Court summarized the *Tull* Court's conclusion as follows: "Although venue was no longer proper, the court held that the plaintiffs were

entitled to the benefit of the savings statute because they were not negligent in settling their claims against the corporate defendants." 804 N.W.2d at 281.

Turning to *Furnald*, the plaintiff timely filed a personal injury lawsuit against defendants. 804 N.W.2d at 274. A trial date was set, but eleven days prior to the scheduled trial, the plaintiff voluntarily dismissed his claims without prejudice. *Id.* Approximately two-and-one-half months later, the plaintiff re-filed his action. *Id.* In the answer, the defendants raised the affirmative defense that the plaintiff's action was barred by the two-year statute of limitations. *Id.* The defendants moved for summary judgment, and the plaintiff resisted. *Id.* at 274-75. In his resistance, the plaintiff claimed that:

> Iowa Code section 614.10 permits a unilateral, voluntary dismissal when the plaintiff's medical condition 'continued to deteriorate' after the filing of the action. In preparing for trial, [the plaintiff's] counsel reviewed December 2008 medical records in February 2009 and determined that additional medical examinations were necessary to determine if future medicals should be part of [plaintiff's] claim. . . . The gist of [the plaintiff's] position was that, because his physical condition was deteriorating and the nature of his injuries evolving, he could voluntarily dismiss his claim in order to better develop his damages claim.

*Id.* at 275. The Iowa Supreme Court determined that under the circumstances of the case, the plaintiff was "not entitled to avail himself of the Iowa savings statute." *Id.* at 284. Following the *Archer -- Pardey -- Ceprley* line of cases, the Iowa Supreme Court found that the plaintiff was not compelled to dismiss his case. *Id.* at 282-83. Specifically, the Iowa Supreme Court found that the plaintiff:

> plainly could have sought a continuance or a delay as a remedy to the evolving medical evidence. . . . But [the plaintiff] did not follow this course. Instead, [he] made a strategic choice to forgo seeking a continuance or delay in the underlying action and took matters into his own hands. Such strategic choices, however, are not the kind of compulsion which awakens our savings statute under *Archer*, *Pardey*, and *Ceprley*.

11

*Id.*

In its analysis, the Iowa Supreme Court explained that:

> The *Archer -- Pardey -- Ceprley* line of cases stands for the proposition that for a voluntary dismissal to be within the scope of the term 'fails' under the savings statute, there must be compulsion to the extent that a plaintiff's entire underlying claim has been, for all practical purposes, defeated. If the claim can still be pursued in the underlying action, it has not 'failed' and it is 'negligence' in the prosecution of the case not to press the matter to conclusion.

*Id.* at 282 (citations omitted). The Iowa Supreme Court concluded that:

> Under the established *Archer -- Pardey -- Ceprley* approach, the remedy offered by Iowa's savings statute is narrow and sharp, not broad and blunt. The notion that our savings statute is designed to protect plaintiffs only from getting ensnared in fatal technical procedural problems that cannot be avoided through due diligence in the underlying litigation is not illogical or otherwise odd.

*Id.* at 283-84.

### B. Was Clemons Compelled to Dismiss His Action in State Court?

Clemons offers two reasons why he was allegedly compelled to dismiss his action in state court and re-file it in federal court. First, Clemons argues that he was compelled to dismiss his state court action because he would be prejudiced by the state court's ruling allowing Defendant Wullweber to wear his police uniform at a videotaped deposition, and presumably at trial. Clemons asserts that unlike state court, the federal court would not allow Wullweber to wear his police uniform at his deposition or trial. Second, Clemons argues that he was compelled to dismiss his state court action due to the "expanding claims" against Defendants, including the "widespread," "systematic," and "department-wide" misuse of a K-9 officer. Clemons believes that justice would be more fairly obtained by a jury in federal court, than by a jury in state court.

### 1. Defendant Wullweber Being Allowed to Wear His Police Uniform

Clemons believes that he is entitled to the protection of Iowa Code section 614.10 because he sought a protective order in state court to keep Officer Wullweber from wearing his police uniform at his videotaped deposition. Clemons argues that the state court's refusal to enter such a protective order compelled him to dismiss his state court action, because he would be prejudiced if Wullweber was allowed to wear his police uniform at his videotaped deposition. Clemons reads *Furnald* to support the proposition that any plaintiff who unsuccessfully seeks court intervention to remedy a problem, may dismiss his or her action without prejudice and re-file the action pursuant to Code section 614.10.[12] Clemons concludes that:

> In this case, Plaintiff Clemons was under 'some compulsion to dismiss,' because he sought court intervention to resolve the prejudicial wearing of police uniforms in front of the jury, but was denied a remedy. Clemons' choice was to either proceed with the video deposition and trial in state court where Defendant Wullweber and other police officer witnesses would be allowed to wear their uniforms, badges and service weapons at trial, or to dismiss and re-file the case in Federal Court where such prejudicial wearing of uniforms would clearly not be allowed.

*See* Clemons' Brief (docket number 25-2) at 12.

The Court is unpersuaded by Clemons reading of *Furnald*. In *Furnald*, the Iowa Supreme Court concluded that "the remedy offered by Iowa's savings statute is narrow and sharp, not broad and blunt." 804 N.W.2d at 283. The purpose of Code section 614.10 is "to prevent minor or technical mistakes from precluding a plaintiff from obtaining his day in court and having his claim decided on the merits." *Id.* at 276.

> The notion that our savings statute is designed to protect plaintiffs only from getting ensnared in fatal technical procedural problems that cannot be avoided through due

---

[12] *See* Clemons' Brief (docket number 25-2) at 8-12.

diligence in the underlying litigation is not illogical or otherwise odd.

*Id.* at 283-84. The Iowa Supreme Court determined that in order for a voluntary dismissal "to be within the scope of the term 'fails' under the savings statute, there must be compulsion to the extent that a plaintiff's entire underlying claim has been, for all practical purposes, defeated." *Id.* at 282. Thus, a claim that can still be pursued in an underlying action, "has not 'failed' and it is 'negligence' in the prosecution of the case not to press the matter to conclusion." *Id.*

Here, Clemons sought a protective order in state court, asking that Officer Wullweber be prohibited from wearing his police uniform at a video-taped deposition. In denying Clemons' request, the state court reasoned that:

> The Court has wide discretion concerning the manner in which deposition testimony is conducted. The rules of civil procedure do not mandate what a person should or should not wear during the taping of a videotaped deposition. The Court agrees with the Defendant [*sic*] that they were sued in the capacity as police officers and therefore should be permitted to wear their uniforms during the videotaped deposition.

*See* Defendants' Appendix (docket number 24-3) at 00030. Clemons argues that allowing Wullweber, or any police officer, to wear his or her police uniform at a videotaped deposition is substantially prejudicial and detrimental to a plaintiff in a § 1983 action. Clearly, however, the state court's ruling on this issue did not preclude Clemons from "obtaining his day in court and having his claim decided on the merits." *Furnald*, 804 N.W.2d at 277. While Clemons may not like the state court judge's decision, and may disagree with it, nothing about the decision defeats his claims. *Id.* at 282.

Clemons argues for a different result because he first filed for a protective order before dismissing his state court claim. The Court believes this is a misreading of *Furnald*. The savings statute is intended to provide relief when a plaintiff becomes "ensnared in fatal technical procedural problems that cannot be avoided through due

14

diligence." *Id.* at 284. Simply because Clemons sought a protective order that was denied, does not mean that he is entitled to the protections of Code section 614.10. *See id.* at 283 ("[T]he remedy offered by Iowa's savings statute is narrow and sharp, not broad and blunt."). Nothing about the denial of the protective order prevented Clemons from pursuing his underlying claims.

In *Weisz*, the plaintiff found relief under the savings statute after he unsuccessfully requested a short continuance of the trial. There, however, the plaintiff was physically unable to attend the trial with only one day of notice, and was thus prohibited from having his "day in court." Being denied a protective order, unlike being denied the ability to present one's case at trial, does not eliminate a plaintiff's ability to continue the litigation process and present his or her case at trial.

Moreover, the Court believes Clemons overstates the significance of Officer Wullweber testifying in his uniform, rather than street clothes. Obviously, Wullweber's status as a police officer will be well known to the jury based on the allegations and the testimony.[13] Bearing in mind that "the remedy offered by Iowa's savings statute is narrow and sharp, not broad and blunt," the Court believes that simply requesting a protective order based on a perception of bias resulting from a witness's clothing, and being denied, does not entitle a plaintiff to the protections of Code section 614.10. *See Furnald*, 804 N.W.2d at 283. Therefore, the Court concludes that Clemons' underlying action did not "fail" within the meaning of the savings statute, and it was "'negligence' in the prosecution of the case not to press the matter to conclusion." *Id.* at 282 (citations omitted).

---

[13] In his Brief in Resistance (docket number 25-2), Clemons cites a number of cases involving the "prejudicial effect" of allowing uniforms to be worn by spectators, character witnesses, and others. He also cites a case in which a criminal defendant was required to wear jail clothes at trial. Clemons does not cite a single case, however, where a trial court was found to have abused its discretion in allowing a police officer, sued in his official capacity, to wear his uniform at trial.

Accordingly, the Court finds that Clemons is not entitled to the protection of Code section 614.10.

### 2. Federal Jury

Clemons argues that he was compelled to dismiss his state court action due to the "expanding claims" against Defendants, including, the "widespread," "systematic," and "department-wide" misuse of a K-9 officer. Because of these "expanding claims," Clemons believes that justice would be more fairly obtained in federal court, than in state court. Specifically, Clemons argues that:

> In the initial state law claim, counsel for Clemons felt comfortable empanelling [sic] a jury made up entirely of Dubuque County residents to resolve the single isolated factual dispute presented. Once the case evolved into a widespread, systemic and department-wide misuse of a K-9, the need to have a jury panel consisting of some non-Dubuque residents became significantly greater. Thus, Clemons was also compelled to file the case in federal district court at that point in order to ensure that a broad cross section of the Eastern Iowa community decided the case.

See Clemons' Brief (docket number 25-2) at 14. Clemons presents no authority for the proposition that after filing a case in one court, a plaintiff may dismiss that case and re-file it in another court because he believes that he will get a fairer trial in the other court.

The *Archer* case involves a nearly identical set of circumstances as the circumstances presented by Clemons. In *Archer*, the plaintiff brought an action in federal court, but voluntarily dismissed the action because he believed he could not receive a fair trial in federal court. 22 N.W. at 895. The plaintiff then attempted to bring the same action in state court. The Iowa Supreme Court refused to apply the savings statute, and did not allow the plaintiff to re-file his claim in state court. *Id.* at 895. The *Archer* court indicated that "a voluntary dismissal under compulsion" may constitute failure under the statute, but a voluntary dismissal without compulsion constituted negligence. *Id.* at 894-95. In *Furnald*, the Iowa Supreme Court stated that "[a]pplying these principles, the

*Archer* court held that dismissal because the attorney believed his client would not receive a fair trial in federal court was an insufficient ground to come within the statute." *Furnald*, 804 N.W.2d at 280.

Clemons' argument is the reverse of *Archer*. Here, Clemons brought his action in state court, but voluntarily dismissed the action because he believed he could not receive a fair trial in state court after it was determined that Officer Wullweber would be permitted to wear his uniform while testifying, and because his claims were "expanding." The Court finds that Clemons' voluntary dismissal was without compulsion and, therefore, the state court claim did not "fail" within the meaning of the savings statute. *See Archer*, 22 N.W. at 894-95; *Furnald*, 804 N.W.2d at 280 ("[T]he *Archer* court held that dismissal because the attorney believed his client would not receive a fair trial in federal court was an insufficient ground to come within the statute."). Accordingly, the Court finds that Clemons is not entitled to the protection of Code section 614.10.

## VI. SUMMARY

The Court concludes that because Clemons' reasons for dismissing his action in state court were not compelled, the action did not "fail" within the meaning of the savings statute and constituted negligence in the prosecution of the case. *See Furnald*, 804 N.W.2d at 282. Thus, Clemons is not entitled to the protections of Iowa Code section 614.10. Therefore, Clemons' action is time-barred by the applicable statute of limitations. *See* Iowa Code section 614.1(2). Accordingly, the Court finds that Defendants are entitled to summary judgment against Clemons, and Clemons' claims are dismissed.

## VII. ORDER

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1. The Motion for Partial Summary Judgment (docket number 24) filed by Defendants Brian Wullweber and the City of Dubuque is hereby **GRANTED**.

2. The claims alleged by Plaintiff Antoine Clemons in the Amended and Substituted Complaint and Jury Demand (docket number 11) filed on May 24, 2011, are hereby **DISMISSED**.

3. The claims of the remaining plaintiffs shall proceed in due course.

DATED this 6th day of January, 2012.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA