IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

MICHAEL COOPER, and
PHILLIP ROBINSON,

    Plaintiffs,

vs.

BRIAN WULLWEBER and
THE CITY OF DUBUQUE,

    Defendants.

No. C10-1032

RULING ON MOTION TO STRIKE

## TABLE OF CONTENTS

I.   INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  DISCLOSURE OF EXPERT WITNESSES . . . . . . . . . . . . . . . . 3

V.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   Terminology . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.   Requirement of Written Report . . . . . . . . . . . . . . . . . 6
    C.   Compliance with Rule 26(a)(2)(B) . . . . . . . . . . . . . . . . 8

VI.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

This matter comes before the Court on the Motion to Strike Testimony from Defense Expert Kenneth Licklider (docket number 32) filed by the Plaintiffs on February 8, 2012; the Brief in Resistance (docket number 33) filed by the Defendants on February

21, 2012; and the Reply Brief (docket number 34) filed by the Plaintiffs on February 24, 2012. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

This case was initiated in federal court by the filing of a complaint by Antoine Clemons and Michael Cooper on December 8, 2010. Plaintiffs claimed that their Constitutional rights were violated in separate incidents by Defendants Brian Wullweber and the City of Dubuque. Specifically, Plaintiffs asserted that Wullweber used excessive force in arresting Plaintiffs, by improperly using his police dog. It was further alleged that Wullweber's actions were racially motivated.

On February 11, 2011, Defendants filed a partial motion to dismiss, arguing that Clemons' claims were time-barred. The partial motion to dismiss was denied on May 20, 2011. However, Defendants later filed a motion for partial summary judgment, raising the same issue. That motion was granted and the claims of Antoine Clemons were dismissed.

Meanwhile, an amended and substituted complaint was filed on May 24, 2011, adding Phillip Robinson as a plaintiff. Robinson, like Plaintiff Michael Cooper, claims that Wullweber used excessive force in employing a police dog to effect Robinson's arrest. It is further alleged that Robinson was discriminated against based on race.

In accordance with 28 U.S.C. § 636(c) and the consent of the parties, this case has been referred to the undersigned magistrate judge for the conduct of all further proceedings. A jury trial is set for October 15, 2012.

## III. RELEVANT FACTS

According to the amended complaint, prior to October 10, 2009, Wullweber made a threat about Michael Cooper, stating words to the effect that "I am tired of dealing with his big black ass and the next time I am going to use my dog." On about October 10, 2009, Cooper was at a home occupied by his fiancé Marsha Saunders – at her request and with her permission – even though a no-contact order was in place. Dubuque police

officers went to the home after receiving a tip that Cooper was inside. After arriving at the scene with his dog, Wullweber "yelled for anyone in the house to come out." Cooper refused to leave the home. According to the amended complaint, Wullweber "then broke open the back door and released the dog into the home to attack Cooper."[1] Cooper was bitten multiple times on the right forearm and required medical attention.

According to the amended complaint, on November 9, 2009, Phillip Robinson was operating a motor vehicle in Dubuque, when he crossed over the bridge into Illinois. Robinson was observed speeding and failed to stop in response to the flashing lights and siren of an approaching police vehicle. After a period of time, Robinson's vehicle crashed into an open field in Illinois, breaking Robinson's left ankle. Robinson got out of the car and laid down on his stomach on the ground with his arms extended in a "surrender position." According to the amended complaint, Wullweber "arrived at the scene shortly after the crash, falsely yelled 'he's running,' and released his K-9 dog to attack Robinson who had already surrendered."[2] Robinson was bitten repeatedly on the left arm and shoulder, allegedly sustaining "physical and mental scarring."

## IV. DISCLOSURE OF EXPERT WITNESSES

On October 7, 2011, Defendants timely served an "Expert Disclosure Pursuant to Rule 26(a)(2)."[3] Defendants identified two expert witnesses: Kenneth D. Licklider and Steve Eastvedt. Licklider owns and operates Vohne Liche Kennels in Denver, Indiana, which provided training to Wullweber and his dog, Doerak. Eastvedt is a corporal with the Dubuque Police Department.

According to his resume, Licklider has substantial experience in the training and handling of police dogs. In their instant motion, Plaintiffs do not argue that Licklider is

---

[1] Amended and Substituted Complaint (docket number 11) at 4, ¶ 24.

[2] *Id.* at 5, ¶ 29.

[3] Plaintiffs' App. at 18-21 and 31-32.

3

not qualified to render expert opinions regarding the training and use of police dogs. Rather, Plaintiffs ask that Licklider be prohibited from offering expert testimony because the expert disclosure fails to comply with Rule 26(a)(2)(B) and Licklider's opinions fail to meet the minimal admissibility requirements of FEDERAL RULE OF EVIDENCE 702.

FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(B)(i) requires a witness who has been retained or specially employed to provide expert testimony in the case to disclose "a complete statement of all opinions the witness will express and the basis and reasons for them." Here, Defendants referred to Licklider's "attached opinion letter." In a letter dated September 28, 2011, Licklider opined:

> 2. The Dubuque K-9 Unit acted within industry standards in the apprehension of the three Plaintiffs. The bites to the Plaintiffs are the result of the K-9's effort to gain control after a judgment has been made by the officer that the release of the K-9 is an appropriate level of force to use under the circumstances. The crimes committed, fleeing/resisting arrest and potential risk of harm to the Plaintiffs, Officers and Public warranted the initial judgment to release the K-9 in all three Plaintiffs' arrests.
>
> 3. Nothing done by the Dubuque K-9 Unit in the arrests of the three Plaintiffs violated any training standard or industry standard regarding suspect apprehension. See (2) above.
>
> 4. The use of a voice command to call off a K-9 during the pursuit or apprehension of a suspect carries a greater risk of injury to the suspect than the choke off method. If, after a command has been given for the K-9 to release the suspect, the suspect moves in any manner, the K-9, consistent with his training, may perceive this movement as an act of aggression and may attempt to regain control of the suspect and will re-bite until control is achieved. **The choke off method of control puts the K-9 back in the control of the**

**handler and is the preferred method of control and
was used properly in the three Plaintiffs arrests.**

Opinion Letter of Kenneth D. Licklider, Plaintiffs' App. at 31-32 (emphasis added).

Plaintiffs' counsel took Licklider's deposition on December 8, 2011. At that time, Licklider had no recollection regarding the circumstances surrounding Cooper's or Robinson's apprehension.[4] While in his opinion letter Licklider states that "[t]he choke off method of control puts the K-9 back in the control of the handler and is the preferred method of control," he appears to back off that opinion at his deposition:

> Q. But your testimony in this case is it's preferable to take the dog off manually, and my question is if it's preferable to take the dog bite off manually, why didn't any organization I found test and train on that process?
>
> A. I never said it was preferable to take them off manually. I said those situations will present themselves, and we train for them. It is not preferable to take them off. It is situational. There are situations that it is preferable, officers' safety situations, but I didn't say it was preferable.

Dep. of Kenneth Licklider, Plaintiffs' App. at 57 (47:14-23).

## V. DISCUSSION

### A. Terminology

Preliminarily, it is necessary to address the terminology employed by the parties and their witnesses, and identify the issues in dispute. Apparently, there are two methods of apprehension commonly taught to police dogs. One is the "find and bite" method, while the other is referred to as the "detention" method. It is the Court's understanding that the find and bite method requires – as the name suggests – that the dog locate the suspect and physically engage him until instructed or forced by its handler to let go. The detention method, on the other hand, calls for the dog to confront the suspect, but physically engage

---

[4] *See* Dep. of Kenneth Licklider, Plaintiffs' App. at 63 (71:1-72:4).

5

only when instructed by its handler to do so. Licklider teaches the "find and bite" method. Plaintiffs' expert, Kyle Heyen, prefers the "detention" method. In his deposition, Heyen conceded that both the find and bite method and the detention method are accepted in the industry.[5] Heyen was unable to state what percentage of kennels in the United States trained to find and bite, as opposed to detention, but "guesstimated" that "at one time it got close to 50 percent."[6]

Plaintiffs apparently do not dispute that the find and bite method of apprehension is accepted within the industry. Rather, the dispute involves whether the police dog was used properly under these circumstances, and whether the appropriate method was used for having the dog release the suspect. The training manual used by Licklider describes the alternatives as "taking off strong" – referred to by the parties here as the "choke-off" method – and the "call-off" alternative.[7] If permitted to do so, Licklider will testify Wullweber acted within industry and training standards in deploying Doerak, and properly used the choke-off method during the incidents involving Cooper and Robinson. Heyen will apparently testify Doerak's deployment violated industry standards, and that the call-off method should have been used.[8]

### B. Requirement of Written Report

Initially, Defendants assert in passing that Licklider "is not a retained expert" and that compliance with FED. R. CIV. P. 26(a)(2)(B) is not required.[9] Licklider operates Vohne Liche Kennels, trained Doerak, and sold him to the City. Plaintiffs concede that

---

[5] Dep. of Kyle Heyen, Defendants' App. at 26 (83:9-14).

[6] *Id.* at 26 (83:18-84:6).

[7] *See* Plaintiffs' App. at 23 and 29.

[8] Only a portion of Heyen's written report was submitted to the Court. *See* Plaintiffs' App. at 39-44.

[9] Defendants' Brief in Resistance (docket number 33) at 2.

Licklider is a "potential fact witness" regarding Doerak's training and certification. However, Defendants also intend to elicit opinion testimony from Licklider regarding whether Wullweber acted within industry standards in deploying Doerak in the apprehension of Plaintiffs. To assist in reaching his expert opinions, Licklider was provided with information regarding the circumstances of Plaintiffs' arrests.[10]

A party must disclose to the other party the identity of any witness it may use at trial to present expert testimony. FED. R. CIV. P. 26(a)(2)(A). The Rules require some expert witnesses to provide a written report prepared and signed by the witness, while other witnesses are not required to provide a written report. *Compare* Rule 26(a)(2)(B) with Rule 26(a)(2)(C). "[I]f the witness is one retained or specially employed to provide expert testimony in the case," then a written report is required. Rule 26(a)(2)(B). Among other things, the report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Rule 26(a)(2)(B)(i). If a written report is not required, then the expert disclosure must only include the "subject matter" of the expert testimony and "a summary of the facts and opinions to which the witness is expected to testify." Rule 26(a)(2)(C). Here, Plaintiffs argue that "Licklider provided Plaintiffs with only conclusory statements that are not sufficient to comply with the expert opinion disclosure rule."[11]

In arguing that a Rule 26(a)(2)(B) report is required, Plaintiffs analogize to a treating physician who is also called upon to render an expert opinion. *See, e.g.*, *Navrude v. United States*, 2003 WL 356091 (N.D. Iowa) at *7. Defendants argue – without citation to authority – that a written report is not required under these circumstances. Nonetheless,

---

[10] The information provided to Licklider was identified in paragraph 1(ii) of Defendants' expert disclosure statement. *See* Plaintiffs' App. at 18-19.

[11] Plaintiffs' Brief (docket number 32-1) at 10.

Defendants assert they provided expert disclosure in compliance with Rule 26(a)(2)(B).[12] The Court concludes that in addition to being a fact witness, Licklider has been "specially employed to provide expert testimony" in this case, thereby requiring a written report in compliance with Rule 26(a)(2)(B).

### C. Compliance with Rule 26(a)(2)(B)

If a written report is *not* required, then the expert witness disclosure need only contain "a summary of the facts and opinions to which the witness is expected to testify." Rule 26(a)(2)(C)(ii). If a written report *is* required, however, then the expert witness disclosure must be accompanied by a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Rule 26(a)(2)(B)(i). Plaintiffs argue that Licklider's report fails to state the "basis and reasons" for his opinions and, therefore, he should be prohibited from testifying regarding those opinions. *See Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (When a party fails to provide information in compliance with Rule 26(a), the Court "may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless.") (citing FED. R. CIV. P. 37(c)(1)). *See also Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1365 (Fed. Cir. 2011) ("Rule 37(c)(1) 'gives teeth' to the written report requirement of Rule 26(a)(2)(B).").

The purpose of the written reports "is not to replicate every word that the expert might say on the stand," but is instead intended to convey the substance of the expert's opinion, so that the opponent will be ready "to rebut, to cross-examine, and to offer a competing expert if necessary." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010). The Advisory Committee notes to Rule 26 make it clear that a detailed written report is required.

> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an

---

[12] *See* Expert Disclosure, Plaintiffs' App. 18-21 and 31-32.

> employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed. Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

FED. R. CIV. P. 26, Advisory Committee notes, 1993 Amendments.

Courts around the country have prevented an expert from testifying when the written report failed to provide the basis and reasons for the expert's opinions. *See, e.g.*, *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) at n.6 ("Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.") (citing *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)); *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996); *Reynolds v. Freightliner LLC*, 2006 WL 5249744 (E.D. Ky.) at *5 ("Those courts considering the implication of Rule 37 on the Rule 26 expert requirements consistently hold that exclusion is an appropriate remedy well within the Court's discretion.").

Here, the opinion letter submitted by Licklider fails to provide the "basis and reasons" for his opinions, as required by Rule 26(a)(2)(B)(i). Licklider's first stated opinion is that Wullweber "acted within industry standards in the apprehension of the three

Plaintiffs." As stated by Plaintiffs in their brief, "[t]he closest Licklider got to providing a basis for his opinion" was stating: "The crimes committed, fleeing/resisting arrest and potential risk of harm to the Plaintiffs, Officers and Public warranted the initial judgment to release the K-9 in all three Plaintiffs' arrests." These "reasons" are themselves conclusory and clearly fail to provide the "detailed and complete written report" envisioned by the rules. Instead, they can best be described as "sketchy and vague," providing little help to Plaintiffs in even preparing for Licklider's deposition.

The second opinion expressed by Licklider in his opinion letter is similar to the first. That is, Licklider opines that "[n]othing done by [Wullweber] in the arrests of the three Plaintiffs violated any training standard or industry standard regarding suspect apprehension." Rather than articulate the "basis and reasons" for that opinion, however, Licklider simply refers to the single sentence – quoted above – given to support his first opinion. Accordingly, Licklider's report regarding his second opinion suffers from the same defect applicable to the first.

Finally, Licklider opines in his written report that the choke-off method of removing the dog from the suspect "is the preferred method of control and was used properly in the three Plaintiffs' arrests." Licklider makes no effort in his opinion letter to provide any "basis and reasons" for his conclusion in that regard.[13] Accordingly, Defendants failed to comply with the requirements of Rule 26(a)(2)(B)(i) regarding Licklider's third opinion.

If one concludes that Licklider's report complied with Rule 26(a)(2)(B)(i), then it is difficult to imagine a report which would fail to comply. The Court concludes that Defendants failed to provide a written report setting forth "a complete statement of all opinions the witness will express and the basis and reasons for them," as required by FED. R. CIV. P. 26(a)(2)(B)(i). That does not, however, end the inquiry. As a consequence of Defendants' noncompliance, the Court "may exclude the information or

---

[13] It is not clear from his deposition that Licklider actually believes that the choke-off method is the preferred method for removing a dog from the suspect.

10

testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Wegener*, 527 F.3d at 692. Accordingly, the Court must determine whether Defendants' noncompliance was "substantially justified or harmless." "The burden of proof is on the potentially sanctioned party to prove harmlessness or justification." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 905, 913 (N.D. Ohio 2008) (citing *Salgado*, 150 F.3d at 741-42).

Plaintiffs took Licklider's deposition on December 8, 2011.[14] *If* Licklider had provided the "basis and reasons" for his opinions that Wullweber complied with industry standards and appropriately used the choke-off method in removing Doerak, then it could be argued that Defendants' failure to include that information in the written report was harmless.[15] When asked about the incidents giving rise to this lawsuit, however, Licklider professed no knowledge.

> Q. Now, did you know in the Phillip Robinson case, Officer Wullweber stated that he needed to use the dog because Mr. Robinson was running away from a motor vehicle crash. Did you know that?
>
> A. I may have read it, sir.
>
> Q. Well, tell me what you remember about the Phillip Robinson arrest situation.
>
> A. I did not focus on the arrest situation; I focused on the use of the dog, so.

---

[14] A copy of Licklider's deposition was attached to the instant motion. *See* Plaintiffs' App. at 45-75.

[15] The Court notes, however, that in *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995), the Eighth Circuit Court of Appeals stated that a party's election to depose the opposing party's expert does not "excuse" a failure to comply with the Scheduling Order and Rule 26(a)(2)(B).

> Q. Well, tell me what you focused on in the Phillip Robinson situation.
>
> A. On the use of the dog.
>
> Q. What facts did you focus on what – tell me what you know about that.
>
> A. I'd have to review.
>
> Q. All right. So on top of your head, you don't remember anything in particular about the – about the Phillip Robinson arrest sequence and use of the dog?
>
> A. I remember that what I read followed what I would have done if I'd have been in the same situation.
>
> . . .
>
> Q. And what about the Michael Cooper, any specific recollection about the facts of that arrest?
>
> A. No, sir.

Dep. of Kenneth Licklider, Plaintiffs' App. at 63 (71:1-72:4).

Accordingly, not only did Licklider's written report fail to provide the basis and reasons why Licklider believes Wullweber complied with industry standards in deploying Doerak and pulling him off, he could not recall the events at the time of his deposition and, necessarily, was unable to testify regarding the "how" and "why" of Wullweber's alleged compliance.[16] Under these circumstances, the Court concludes that Defendants have failed to prove that their noncompliance with Rule 26(a)(2)(B)(i) was harmless. Nor have they proved that the noncompliance was substantially justified. Therefore, pursuant to Rule 37(c)(1), the Court concludes that Licklider should be prohibited from offering any

---

[16] While Licklider was apparently provided with information regarding these events, his opinion letter and deposition testimony could have been given without *any* knowledge of the facts surrounding Plaintiffs' apprehensions.

expert testimony in this case. That is, while Licklider can testify as a fact witness regarding Defendants' acquisition of Doerak, and the training received by Wullweber and Doerak, he will not be permitted to offer an expert opinion that Wullweber acted within industry standards or training standards in deploying Doerak in these two instances, or that the choke-off method of removing Doerak was the preferred method of control under these circumstances.[17]

## VI. ORDER

For the reasons set forth above, it is **ORDERED** that the Motion to Strike Testimony (docket number 32) filed by the Plaintiffs is **GRANTED**. Defendants are prohibited from eliciting expert testimony from Kenneth Licklider at the time of trial.

DATED this 25th day of May, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[17] Given the Court's determination regarding the appropriate sanction for noncompliance with Rule 26(a)(2)(B)(i), it is unnecessary to consider Plaintiffs' alternative argument that Licklider's testimony fails to comply with FEDERAL RULE OF EVIDENCE 702.